**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| GENE A. STIDHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-05-741-F |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Gene A. Stidham seeks judicial review of the final decision of the Defendant Commissioner denying his application for disability insurance benefits and supplemental security income benefits. This matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**I.   Procedural History**

Plaintiff protectively filed for benefits on March 21, 2003, alleging an inability to work since February 9, 2002. AR 25, 26-28, 30-31.[1] Plaintiff contends he is disabled

---

[1] Plaintiff's application for supplemental security income benefits lists an onset date of May 1, 2002. AR 30-31. There is no apparent explanation for this discrepancy.

because of injuries to his back and neck. AR 51. Plaintiff's application was denied initially and on reconsideration. AR 29, 37, 39. Subsequently, an Administrative Law Judge (ALJ) held a hearing, and after consideration of the evidence, the ALJ found that Plaintiff was not disabled at any time through October 28, 2004, the date of the ALJ's decision. AR 13-23. The Appeals Council received additional evidence, which it made a part of the record, but it ultimately denied Plaintiff's request for review. AR 4-7. Therefore, the decision of the ALJ is the final decision of the Commissioner.

## II.    Relevant Background

On the day of the administrative hearing, Plaintiff was 58 years old, which, under the regulations, makes him a person of "advanced age."[2] Although Plaintiff received a college degree in business administration in 1969, he did not work at jobs requiring a business degree. AR 188. From 1980 through 1987, Plaintiff worked as a motorcycle police officer, and during that time, he was involved in five motorcycle accidents. AR 63, 188-189.

On February 6, 2002, Plaintiff was knocked unconscious when he lost control of his SUV on an icy road and flipped the vehicle several times. The vehicle came to rest on its top. AR 97, 108, 110, 195.

On March 11, 2002, Plaintiff began treatment at the Chickasha Chiropractic Clinic. AR 97. Plaintiff complained of back and neck pain and stiffness with pain radiating into his shoulders. AR 98. Plaintiff was treated daily at the clinic for the next four weeks and

---

[2]Individuals who are 55 and over are of "advanced age." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(f).

frequently thereafter.  AR 103-107.  On March 20, 2002, Dr. Jennifer A. Logsdon, a doctor at the Chickasha Chiropractic Clinic, completed a Medical Statement of Ability to Work form which stated that Plaintiff could do no lifting or prolonged sitting, that he would have difficulty turning his head while driving, and that his injuries and treatment would affect the number of hours he could work.  AR 109.  On August 8, 2002, Dr. Logsdon stated her opinion that Plaintiff "has suffered a significant amount of injury due to the motor vehicle accident he was involved in on February 6, 2002."  AR 110.

On April 5, 2002, Plaintiff saw a medical doctor, Dr. Victoria Johnson, for his lower back pain, bleeding hemorrhoids, umbilical hernia, depression, and difficulty urinating.  AR 80.  Dr. Johnson noted muscle spasms with trigger points.  To help relieve Plaintiff's neck and back pain, Dr. Johnson administered 20 trigger point injections.  She also prescribed Flexeril and Ultram for back pain, Xanax for anxiety, and Celexa for depression.  AR 81.  Plaintiff returned to Dr. Johnson for more trigger point injections on April 25, 2002, and May 16, 2002.  AR 79, 78.  On May 21, 2002, Plaintiff complained that he had felt lethargic for several hours after the last round of trigger point injections.  Dr. Johnson monitored Plaintiff's heart with a Holter monitor and scheduled him for an echocardiogram.  AR 77.  Both were normal.  AR 76.

On April 16, 2002, MRI studies of Plaintiff's neck and lower back were made.  The MRI studies taken of Plaintiff's neck showed a moderate circumferential bulge at C5-6 and mild circumferential bulges at C3-4, C4-5 and C6-7 as well as moderate spurring at C5-6 and mild spurring at C3-4 and C6-7.  The MRI also showed mild spurring at the posterior

inferior margin of C5 and an acute Schmorl's node involving the anterior superior end plate of T-1. There was not, however, any evidence of vertebral compression, fracture, or marrow replacement. AR 73. The MRI of Plaintiff's lower back revealed a mild circumferential disc bulge at L2-3 with a small midline annular tear which had mildly indented the anterior thecal sac. A circumferential disc bulge at L3-4 was described as moderate and had resulted in mild bilateral foraminal narrowing. At L4-5, there was also mild circumferential disc bulging and moderate facet joint hypertrophy which had resulted in mild bilateral foraminal narrowing. AR 74.

On July 1, 2002, Plaintiff was seen by Dr. Miles C. Langmacher for continuing back and neck pain. Dr. Langmacher changed Plaintiff's Ultram to Ultracet and recommended physical therapy and low back exercises. AR 75.

Dr. Logsdon referred Plaintiff to Dr. Lee Vander Lugt, an orthopaedic consultant. On July 15, 2002, Plaintiff saw Dr. Lugt and complained of headaches and low back pain. Dr. Lugt examined Plaintiff and noted significant cervical paravertebral spasm and "very exquisite trigger point in the left supraspinatus tendon and trapezius musculature." Plaintiff reported some low back pain on palpation. Dr. Lugt diagnosed Plaintiff with cervical spondylosis without a myelopathy and lumbar degenerative disc disease. AR 95.

On August 13, 2003, Plaintiff was seen by Dr. Juan A. Maldonado for a consultative medical examination. AR 116-117. Dr. Maldonado noted decreased range of motion in the right shoulder associated with shoulder pain. He further noted that Plaintiff's shoulder muscles were hard to palpation, suggestive of muscle spasms. Plaintiff reported pain on

straight leg raising both sitting and lying flat. Dr. Maldonado diagnosed Plaintiff with degenerative joint disease, history of back pain, history of depression, history of rectal bleeding secondary to hemorrhoids, and peptic ulcer disease. AR 117.

On September 3, 2003, Dr. Thurma Fiegal completed a Physical Residual Functional Capacity Assessment. Using the familiar checklist form, Dr. Fiegal found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, that he could stand or walk about six hours in an eight-hour workday, that he could sit with normal breaks for about six hours in an eight-hour workday, and that his ability to push and/or pull hand and/or foot controls was unlimited other than the limitations for lifting and carrying. AR 128. As for postural limitations, Dr. Fiegal found that Plaintiff could stoop only occasionally. AR 129.

On August 15, 2003, Keith Green, Ph.D., a clinical psychologist, conducted a psychological evaluation consisting of behavioral observations, case history interview, and a mental status examination. AR 122-125. Plaintiff displayed adequate attention and concentration and worked at an adequate pace. Dr. Green stated that Plaintiff could retain and carry out simple and detailed instructions and relate interpersonally in an appropriate manner. AR 124. Dr. Green's diagnostic impression was Pain Disorder Associated with Both Psychological Factors and General Medical Condition. AR 125.

**III.   The ALJ's Disability Determination**

The ALJ followed the sequential evaluation process required by 20 C.F.R. § 404.1520 and § 416.920. She first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 17-18, 22. Even though Plaintiff had some earnings after his alleged onset date, the ALJ specifically found that Plaintiff's work as a cashier and as a motor vehicle sales representative were "unsuccessful work attempts and not substantial gainful work activity." AR 18.

At step two, the ALJ determined that Plaintiff suffers from impairments including discogenic and degenerative disorders of the back as well as osteoarthrosis, impairments that cause significant vocationally relevant limitations and are therefore severe. AR 18, 22.

At step three, the ALJ found that none of Plaintiff's impairments or combination of impairments meet or equal the criteria of any listed impairment described in the regulations. AR 20, 22.

At step four, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work. AR 21, 22. Based on Plaintiff's RFC, the ALJ concluded that Plaintiff could perform his past relevant work as security guard, cashier II, and motor vehicle sales representative. AR 22.

**IV.   Plaintiff's Claims Raised on Appeal**

Plaintiff raises two claims in this appeal. First, Plaintiff contends that this case must be reversed and remanded because the ALJ's credibility analysis is contrary to law and is not supported by substantial evidence. Second, Plaintiff contends that the ALJ's finding that he

retains the RFC for light work and can therefore return to his past relevant work is not supported by substantial evidence. These two claims are closely linked and will be considered together.

## V.     Standard of Review

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* at 760 (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether specific rules of law were followed in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172.

## VI.    Analysis

Plaintiff challenges the ALJ's credibility findings particularly as they relate to the ALJ's RFC determination.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v.*

*Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  In assessing an individual's credibility regarding symptoms, the administrative law judge should consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the [administrative law judge], the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (*citing Huston v. Bowen*, 838 F.2d 1125 (10th Cir. 1988)).  Additionally, credibility findings should be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler*, 68 F.3d at 391.  Nevertheless, the Tenth Circuit has "not reduced credibility evaluations to formulaic expressions: '*Kepler* does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.'"  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (*quoting Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

In this case, the ALJ cited several reasons for her conclusion that Plaintiff's subjective complaints were not fully credible.  The ALJ relied heavily on what she assumed to be Plaintiff's daily activities:

> The Administrative Law Judge finds that the claimant's allegations of a disabling impairment are not supported by credible facts and findings [from] which it can be concluded that he has an impairment that could reasonably be expected to cause the degree of limitation[] which he alleged.  There is no indication that his daily activities were curtailed to an extent that would

> suggest an inability to engage in all work activity. He testified that he checks fences and rides a tractor some on the ranch but can not feed cattle. The claimant testified that he fishes every other day. The claimant testified he could care for his personal needs, could cook and shop. He stated he goes to church and visits neighbors[,] and he also stated he fishes a lot and watches sports on television. The claimant testified he could stand 45 minutes, walk 1/4 a mile, and sit for 30 minutes. The claimant testified that he has a driver's license and does drive a little. Claimant attempted to work and in fact did work for 3 months, 6 months, and then 8 months at various jobs the last being a security guard. Although the claimant does experience some limitations, the Administrative Law Judge was not persuaded that it rose to a level of severity and was of such duration and intensity to preclude him from engaging in all substantial gainful activity.

AR 20-21.

As Plaintiff correctly notes, however, the ALJ's statement that Plaintiff "rides a tractor some on the ranch" is simply not supported by the record. In fact, Plaintiff testified that he had been able to check fences and ride a tractor before his motor vehicle accident, but that he can no longer perform these tasks. Plaintiff testified that these tasks are now performed by his son and that he, himself, just "ride[s] along and watch[es]." AR 192-193. Moreover, Plaintiff testified that before his accident, he had been operating a tractor for Brahms. Plaintiff stated that he had quit his job with Brahms because his neck injury precluded him from turning his head to look behind him, making it impossible for him to drive a tractor. AR 204.

The extent to which the ALJ relied on this inaccurate characterization of Plaintiff's daily activities when she evaluated his credibility and established his RFC appears significant. Driving a tractor over ranch land is the most taxing activity cited, incorrectly, as one of Plaintiff's daily activities. The other activities the ALJ relied on are not so

9

significant. As a general rule, "evidence that a claimant engages in limited activities . . . does not establish that the claimant can engage in light or sedentary work activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) (quotation omitted). *See also Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (claimant's testimony that he camped out frequently, hunted and fished, had no difficulties driving his standard-shift utility vehicle, and occasionally mowed the lawn did not establish that the claimant could engage in light or sedentary work activity). The ALJ's credibility finding is, therefore, not based on substantial evidence.

Plaintiff also challenges the ALJ's statement that she was not persuaded that Plaintiff's limitations "rose to the level of severity and was of such duration and intensity to preclude him from engaging in all substantial gainful activity." AR 21. This statement is essentially a step-five determination that Plaintiff can perform some jobs existing in the national economy. As Plaintiff points out, however, the ALJ's decision was ultimately based on her step-four finding that Plaintiff could perform his past relevant work as "security guard, cashier II, and motor vehicle sales representative." AR 22. Each of these occupations was identified by the VE as "light in exertion."[3] The ALJ's decision on this point, however, is

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

internally inconsistent.  First, the ALJ determined that Plaintiff's short stints working as a cashier and as a motor vehicle sales representative were "unsuccessful work attempts and not substantial gainful work activity."  AR 18.  In making this determination, the ALJ apparently accepted and relied on Plaintiff's testimony that he left both the cashier job and the motor vehicle sales representative job because he could not handle the standing and walking these jobs required.  AR 190-191.  If a claimant's impairments cause him to be unsuccessful in an attempt to work at a particular job, as the ALJ found was true of Plaintiff in this case, it is illogical for the ALJ to then assert that the claimant's RFC would allow him to return to the very job he had previously quit because his impairments precluded him from performing the job.  There is no evidence in the record that Plaintiff's impairments had improved after his unsuccessful work attempts.  Because both cashier and motor vehicle sales representative are both classified as light, the ALJ's determination that Plaintiff's work constituted "unsuccessful work attempts" casts substantial doubt on her finding that Plaintiff retains the RFC to perform light work.

The ALJ's flawed analysis cannot be salvaged by the one remaining job she correctly identified as past relevant work – the security guard job Plaintiff held for eight months. Although "security guard" is also classified as light work, it is clear from Plaintiff's testimony that he actually performed this job at the sedentary level until the end of the eight-month period during which he worked as a security guard.  Plaintiff testified that he was forced to leave this job, too, when his employer changed the physical requirements of the job:

> Plaintiff:   I was doing security for Delta Faucet . . . . That was sitting in a little room for eight hours.
>
> . . .
>
> Attorney:   Why did you leave Delta?
>
> Plaintiff:   Well, they wanted [me] to start walking – they've got a big building, and they wanted just to [walk] and do a circle of the building every three or four hours, and I just couldn't do it.

AR 206-207. The ALJ's determination that Plaintiff retains the RFC for light work, which requires the ability to do "a good deal of walking or standing," and that he can therefore return to his work as a security guard is not supported by substantial evidence in the record as a whole.

A precise RFC is particularly important in this case because Plaintiff is considered to be of "advanced age" under the regulations, and he could very well be found disabled under the Medical Vocational Guidelines (Grids) if his severe impairments prevent him from returning to his former security guard job. If limited to sedentary work, Plaintiff might be found disabled under 20 C.F.R. Pt. 404, Subpt. P, App. 2 Rule 201.06. Even if Plaintiff were physically able to do some jobs requiring a light exertional level, he might still be found disabled under Rule 202.06.[4]

---

[4]The result in each case would depend on whether Plaintiff's education prepared him for "direct entry into skilled work" and whether Plaintiff has transferrable skills from his past relevant work as a security guard, which according to the VE, is a semiskilled occupation. *See* Rules 201.06, 202.06.

Because the ALJ's assessment of Plaintiff's credibility and her determination of Plaintiff's RFC are based on information inconsistent with the factual record, the ALJ's decision is not supported by substantial evidence.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any such objections must be filed with the Clerk of the District Court by July __27th__, 2006.  *See* LCvR72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __7th__ day of July, 2006.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE